IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> $32,250.00 IN U.S. CURRENCY, <br><br> Defendant. | 8:19CV90 <br><br> **COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the defendant properties, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881(a).

### The Defendant *In Rem*

2. The defendant property is $32,250.00 in United States currency seized on October 12, 2017, from a 2017 Jeep Grand Cherokee, Kentucky license plate 739 WXY, driven by Aaron Barragan Contreras. The seizure occurred after a traffic stop near mile marker 371 on westbound Interstate 80 in Seward County, Nebraska.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C.

§ 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

4. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

6. The Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

7. On October 12, 2017, Seward County Sheriff's Deputy and U.S. Department of Homeland Security Task Force Officer Sergeant Mike Vance was running stationary radar on westbound traffic on Interstate 80 in Seward County Nebraska.

8. Sergeant Vance saw a Jeep Grand Cherokee SUV, impeding traffic by driving below the speed limit in the passing lane.

9. As Sergeant Vance approached the Jeep Grand Cherokee SUV in his patrol car, the SUV changed lanes without signaling at least 100 feet prior to the lane change, as required by Nebraska law.

10. Sergeant Vance then conducted a traffic stop of the Jeep Grand Cherokee SUV, which displayed a Kentucky license plate.

11. Sergeant Vance exited his patrol car and approached the SUV by the passenger side window to speak with the driver and passenger.

12. Sergeant Vance saw that there was a driver and one passenger in the SUV.

13. Sergeant Vance asked for the driver's license and for the SUV registration.

14. The driver presented his California's driver's license showing that his name was Aaron Contreras Barragan.

15. While standing outside the driver's side window of the SUV, Sergeant Vance smelled the odor of burnt marijuana.

16. Contreras told Sergeant Vance that he rented the SUV but did not have a rental agreement with him.

17. In plain view, Sergeant Vance saw three mobile phones in the SUV.

18. Sergeant Vance explained the reasons for stopping the SUV.

19. Sergeant Vance asked Contreras to accompany him to his patrol car, and the driver complied.

20. As Sergeant Vance was walking away from the SUV, he saw two back packs and a blanket in the back seat and two other bags in the rear area of the SUV that looked empty.

21. In the patrol car, Sergeant Vance explained to Contreras that he was going to issue him a warning for his driving violations.

22. While in the patrol car, Sergeant Vance could smell the odor of marijuana on Contreras' clothing.

23. Sergeant Vance saw that Contreras continued to act very nervous even though Vance told him that he would only receive a warning.

24. Nervousness usually subsides after receiving such relieving news that the motorist will not receive a ticket.

25. Contreras volunteered that he was driving to California to assist with the ongoing California wildfires.

26. Sergeant Vance then asked Contreras where he was coming from, and Contreras said he was coming from Florence, Kentucky, near Cincinnati, Ohio.

27. Contreras said he was visiting his family in Florence.

28. Sergeant Vance asked Contreras how long he was in Ohio, and Contreras said for two weeks.

29. Contreras identified the male passenger as his cousin. Contreras also said his cousin was from Vancouver. Contreras also said his cousin is a doctor and was visiting.

30. Sergeant Vance then asked Contreras if his cousin lives in Canada, and Contreras said "yeah."

31. Sergeant Vance asked Contreras who rented the SUV, and Contreras said "me."

32. Contreras said he rented the SUV from an Enterprise near an airport.

33. Sergeant Vance saw that Contreras' artery in his neck was pulsating, indicating continued nervousness.

34. Sergeant Vance stepped out of his patrol car to check the VIN number of the rented SUV.

35. The male passenger began to engage in conversation with Sergeant Vance, asking Vance if it was snowing ahead.

36. Sergeant Vance asked the male passenger where he lived, and the male passenger said Mexico.

37. Sergeant Vance returned to his patrol car where Contreras was still seated.

38. Sergeant Vance saw that Contreras was constantly playing with his license, indicating that Contreras continued to be very nervous.

39. Contreras said his cousin had been living in Canada for three months and he moved to Canada to study surgery.

40. Sergeant Vance explained the warning to Contreras and asked him to sign the warning. Contreras complied and signed the warning.

41. Sergeant Vance told Contreras that he was free to go.

42. As Contreras began opening his door, Sergeant Vance asked Contreras if he could ask him a few questions, and Contreras said "yea, for sure."

43. Sergeant Vance asked Contreras if he and or his passenger had any weapons in the vehicle. Contreras said "no" while shaking his head side to side.

44. Sergeant Vance again asked Contreras if he had any large amounts of U.S. currency in the SUV. Contreras looked toward the SUV and softly said "no," but did not shake his head from side to side.

45. Sergeant Vance asked Contreras if there were any drugs in the vehicle and Contreras responded by shaking his head and verbally saying, "no."

46. Sergeant Vance believed that Contreras' answer regarding currency indicated deception.

47. Based on the smell of marijuana, Contreras's nervous manner, and the contradictory statements regarding Jimenez's country of residence, Sergeant Vance believed reasonable suspicion existed to detain Contreras and the passenger in order to further investigate whether they were involved in criminal activity.

48. Sergeant Vance asked Contreras if he could search the SUV, and Contreras responded, "yea for sure," indicating his consent to such a search of the SUV.

49. Sergeant Vance asked the male passenger to step out of the car and the male passenger complied.

50. While searching the SUV, Sergeant Vance found receipts showing Contreras's recent travel through Missouri and Indiana.

51. Sergeant Vance also found a back pack on the back seat containing three large rubber-banded bundles of U.S. currency.

52. Sergeant Vance also found a shaving kit in the backpack containing eight smaller rubber-banded bundles of U.S. currency, mostly in 20-dollar bills.

53. Based on his training and experience, Sergeant Vance recognized that 20-dollar bills are commonly used in the illegal narcotics trade.

54. In the back of the SUV, Sergeant Vance found two empty duffle bags. Inside one of the empty duffle bags, Sergeant Vance found a piece of a vacuum seal bag and could smell an odor of marijuana in the interior of the bag, and saw some marijuana residue.

55. Sergeant Vance also noticed that there were only two changes of clothing, despite the fact that they were purportedly on a two-week-plus trip.

56. Sergeant Vance returned to his patrol car and asked Contreras how much money was in the bag in the SUV, and Contreras replied that it was, "like 30." Vance attempted to confirm, asking, "About 30 thousand?" and Contreras replied, "yeah."

57. Sergeant Vance provided Contreras with a *Miranda* warning.

58. Contreras nodded during the warning, and when Sergeant Vance asked him if he understood, Contreras said, "yes, I understand."

59. Sergeant Vance asked if Contreras was willing to talk to Vance and Contreras nodded his agreement.

60. Sergeant Vance told Contreras that he believed he was moving the money or hauling the money for someone else. Contreras said, "yeah."

61. Sergeant Vance also said that considering the empty duffle bag, it was obvious that the money was for marijuana. Contreras replied "yep."

62. Contreras claimed that some of the currency belonged to the male passenger, "like seven thousand."

63. Contreras said he had spent some money in Cincinnati.

64. Sergeant Vance informed Contreras that he was being detained.

65. Sergeant Vance transported Contreras to the Seward County Sheriff's Office (SCSO) facility.

66. Seward County Sherriff's Deputy Lisa Pilcher transported the male passenger to the SCSO facility.

67. At the SCSO facility, Contreras claimed that all of the currency belonged to him.

68. At the SCSO facility, Sergeant Vance interviewed the male passenger who was identified as Yasser Barragan Jimenez.

69. Sergeant Vance asked Jimenez, where he lived and Jimenez said he is from Mexico and lives in Canada where he is trying to go to school.

70. Jimenez said he is trying to become a Canadian citizen and moved to Canada to work.

71. Jimenez said none of the money was his and he did not know what Contreras was doing with the money.

72. Jimenez voluntarily abandoned the currency and signed a Department of Homeland Security Abandonment Form (DHS Form 4607).

73. At the SCSO facility, Sergeant Vance conducted a discretionary canine sniff on the currency with his K-9, Igor, which gave a positive indication for the presence of an odor of an illegal narcotic on the currency.

74. The marijuana residue discovered in the duffle bag was field tested which came back positive for THC. The plastic bag found in the duffle bag was also swabbed which tested positive for THC as well.

75. Homeland Security Investigations (HSI), a component agency of the United States Department of Homeland Security, seized the currency. United States Customs and Border Protection (CBP) processed the subject seizure for HSI.

76. CBP is a component agency of the United States Department of Homeland Security, a federal agency. Within CBP, the Fines, Penalties and Forfeitures ("FPF") is the office that processes the administrative forfeiture of funds.

77. Law enforcement transported the seized Defendant currency to Jones National Bank and Trust. An official count of the Defendant currency totaled $32,250.00. The currency was deposited into an account, within CBP's custody and control.

### Claim for Relief
### First Claim for Relief

78. Plaintiff repeats and incorporates by reference the paragraphs above.

79. By the foregoing and other acts, the defendant currency constitutes moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### Second Claim for Relief

80. Plaintiff repeats and incorporates by reference the paragraphs above.

81. By the foregoing and other acts, the defendant currency constitutes proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

### Third Claim for Relief

82. Plaintiff repeats and incorporates by reference the paragraphs above.

83. By the foregoing and other acts, the defendant currency constitutes moneys, negotiable instruments, securities, or other things of value used or intended to be used to facilitate any

violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that the defendant property be forfeited to the United States; that the defendant property be disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney

By: s/ Amy B. Blackburn
Amy B. Blackburn (MO #48222)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail: amy.blackburn@usdoj.gov

## VERIFICATION

I, Sheriff Mike Vance, hereby verify and declare under penalty of perjury that I am a Task force Officer with the Seward County Sheriff's Office, U.S. Department of Homeland Security, that I have read the foregoing Complaint *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 1 through 83 of the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task force Officer with the Seward County Sheriff's Office, U.S. Department of Homeland Security.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: February 25, 2019

*[signature]*
Sherriff Mike Vance
Seward County Sheriff's Office
Task Force Officer, U.S. Department of Homeland Security